# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA WILLIAMS,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:12-cv-00892-AWI-SAB<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S SOCIAL SECURITY APPEAL BE DENIED**<br><br>ECF NO. 1<br><br>OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS |

Plaintiff Angela Williams ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act. (ECF No. 1.) This matter was submitted to the undersigned magistrate judge for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 303.

Plaintiff applied for disability benefits due to her cervical and lumbar spondylosis. For the reasons set forth below, the undersigned recommends that Plaintiff's Social Security appeal be denied.

///

///

///

# I.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff filed her application for Social Security benefits on August 25, 2008. (AR 17.) Plaintiff alleged a disability onset date of June 1, 2008. (AR 17.) Plaintiff's application was initially denied on November 7, 2008 then denied upon reconsideration on February 13, 2009. (AR 17.) On April 13, 2009, Plaintiff filed a request for a hearing. (AR 17.)

On August 18, 2010, a hearing took place before Administrative Law Judge John Cusker. (AR 17, 23.) Plaintiff was represented by an attorney at the hearing. (AR 17.) Thomas Dachelet testified at the hearing as an impartial vocational expert. (AR 17.) On October 8, 2010, the ALJ issued his written determination that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 17-23.) On March 29, 2012, the Appeals Council denied Plaintiff's request for review. (AR 1.)

### A. Plaintiff's Prior Social Security Benefits Application

Prior to filing her application in this case, Plaintiff filed a previous application for Social Security benefits on July 15, 2003. (AR 67.) Plaintiff was not represented by an attorney for the prior application. (AR 67.) On July 13, 2003, Administrative Law Judge Christopher Larsen denied Plaintiff's application. (AR 73.) ALJ Larsen determined that Plaintiff had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, can sit, stand and walk for six hours in an eight hour day, can frequently balance, kneel, crouch, crawl and climb ramps and stairs, can occasionally stoop, and can never climb ropes, ladders or scaffolds. (AR 70.) At the hearing on Plaintiff's prior application, the vocational expert testified that someone with Plaintiff's limitations could perform the full range of unskilled light and sedentary work, and was therefore not disabled. (AR 72.)

### B. Plaintiff's Hearing Testimony

Plaintiff was born on August 26, 1957, making her 52 years old at the time of the hearing before the ALJ. (AR 42.) Plaintiff went to school through the beginning of 11th grade and

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record). Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript. (See ECF No. 12.)

obtained a GED later on.  (AR 42.)  Plaintiff also completed one semester of junior college in the 1970s.  (AR 43.)  Plaintiff last worked in 1979, before she was involved in a car accident.  (AR 43.)  Plaintiff cannot work now because of constant pain in her neck, left ankle and lower back.  (AR 44.)

Plaintiff takes medication for her pain, but has not received any other recent treatment.  (AR 44.)  Years ago, Plaintiff saw a chiropractor for her neck.  (AR 44.)  Plaintiff's last primary physician was Dr. Flores but Plaintiff reported that he is no longer working or moved.  (AR 45.)  Plaintiff saw Dr. Flores approximately once a month for three total visits.  (AR 45.)  Dr. Flores provided Plaintiff with medication for hypertension, muscle spasms and nerves.  (AR 46.)  Dr. Flores gave Plaintiff "one pain medication" but said Plaintiff would have to get more from her pain management doctor, Dr. Singh.  (AR 46.)  Plaintiff sees Dr. Singh once a month.  (AR 47.)

Plaintiff reported that she could walk for one hour during an eight hour day.  (AR 47.)  Plaintiff can stand for 30 minutes before having to sit down.  (AR 47.)  Plaintiff can bend at the waist and bend at the knees "a little bit."  (AR 48.)  Plaintiff has trouble using her hands because her right hand and right arm are always numb and stiff.  (AR 48.)  The heaviest object Plaintiff picked up recently was her eight month old son, who is twelve pounds.  (AR 49.)  Plaintiff can sit for an hour or an hour and a half at a time because her "right hip and ... ankle is like stuck."  (AR 49.)  When asked how sitting affects her ankle, Plaintiff stated that she does not know and that it feels like her circulation is cut off.  (AR 49.)

Plaintiff sleeps for four to five hours during the day.  (AR 50.)  Plaintiff falls asleep while watching television on the couch due to her medications.  (AR 50.)  Plaintiff cooks food such as fried chicken, spaghetti and Hamburger Helper.  (AR 50.)  Plaintiff used to live alone, but recently moved in with her daughter after Plaintiff's boyfriend broke Plaintiff's nose.  (AR 50-51.)  Plaintiff does household chores at home such as washing dishes, mopping, sweeping and laundry.  (AR 51-52.)  Plaintiff shops for groceries with her daughter.  (AR 52.)  Plaintiff plays cards, listens to the radio and talks on the phone.  (AR 52-53.)  Plaintiff visits relatives, such as her oldest daughter who lives in Antioch.  (AR 53.)  Plaintiff last went to Antioch with her other daughter, who drove there.  (AR 53.)  The drive is about three hours, but Plaintiff stops three or

four times along the way. (AR 55.) Plaintiff stated that she has problems with her back when she takes long rides. (AR 55.)

### C. Vocational Expert's Testimony

Thomas Dachelet testified at the hearing before the ALJ as a vocational expert ("the VE"). (AR 56.) The ALJ presented the following first hypothetical to the VE:

- Ability to lift and carry 20 pounds occasionally and 10 pounds frequently;
- Ability to sit, stand or walk for six hours in an eight-hour work day;
- Ability to frequently balance, kneel, crouch, crawl, climb ramps and climb stairs.
- Ability to occasionally stoop; and
- Cannot climb ropes, ladders or scaffolds.

(AR 57-58.) The VE testified that such a person could perform the full range of unskilled light and sedentary work. (AR 58.)

The ALJ presented the following second hypothetical to the VE:

- Ability to lift and carry 50 pounds occasionally and 20 pounds frequently;
- Ability to stand and walk six hours out of an eight hour day with normal breaks; and
- Ability to sit without restriction.

(AR 59.) The VE testified that such a person could perform the full range of medium, light and sedentary unskilled work. (AR 59.)

### D. Plaintiff's Medical Records

Plaintiff's medical record includes records from a consultative orthopedic examination with Dr. Abbas Mehdi, MD dated October 17, 2008 (AR 224-228), a physical RFC assessment by Dr. Sadda V. Reddy, MD dated November 3, 2008 (AR 229-234), a medical evaluation/case analysis by Dr. Reddy dated November 3, 2008 (AR 235-236) and a case analysis by Dr. P. Kammen, MD (AR 244-245). Plaintiff's medical record also includes a questionnaire pertaining to Plaintiff's eligibility for General Relief dated September 8, 2008. (AR 246-247.) It is unclear who authored this form because the signature is illegible. The relevant portions of Plaintiff's medical records are discussed in more detail below with the Court's analysis.

///

**E.     The ALJ's Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff has not engaged in substantial gainful activity since August 25, 2008;
- Plaintiff has the following severe impairments: cervical and lumbar spondylosis;
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;
- Plaintiff has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently, can sit stand or walk for six hours in an eight hour day, can frequently balance, kneel, crouch, crawl and climb ramps and stairs, can occasionally stoop, and cannot climb ropes, ladders or scaffolds;
- Plaintiff has no past relevant work;
- Plaintiff can perform jobs that exist in significant numbers in the national economy; and
- Plaintiff has not been under a disability, as defined in the Social Security Act, since August 25, 2008.

(AR 19-23.)

## II.

**LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS**

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "[A] reviewing court must consider the entire record as a

1  whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill,
2  698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).
3  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the
4  Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)
5  ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's
6  conclusion that must be upheld.")

### III.

### DISCUSSION AND ANALYSIS

Plaintiff raises three arguments in her brief: 1) that under the Medical Vocational Guidelines ("the Grids"), someone with Plaintiff's age and educational background who is limited to sedentary work would be found to be disabled (Pl.'s Opening Brief 3:2-10), 2) that the ALJ erroneously applied the doctrine of res judicata in determining Plaintiff's residual functional capacity (Pl.'s Opening Brief 3:11-4:28), and 3) that the ALJ erred by discrediting Plaintiff's testimony (Pl.'s Opening Brief 5:1-6:17.).

**A.   Plaintiff's Argument Pertaining to the Medical Vocational Guidelines is Irrelevant**

Plaintiff's first argument is that Plaintiff would be found to be disabled by application of the Grids if Plaintiff were limited to sedentary work. (Pl.'s Opening Brief 3:2-10.) However, the ALJ determined that Plaintiff was capable of performing light work, not sedentary work. (AR 20.) Under the Grids, a person in Plaintiff's age category ("closely approaching advanced age"), with Plaintiff's educational background and who is capable of performing light work is not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.10, et seq. As discussed below, the ALJ did not err in his determination of Plaintiff's residual functional capacity. Accordingly, Plaintiff's argument pertaining to the application of the Grids is irrelevant.

**B.   The ALJ Did Not Err by Applying the Doctrine of Res Judicata in Determining Plaintiff's Residual Functional Capacity**

Plaintiff argues that the ALJ erroneously applied the doctrine of res judicata in determining Plaintiff's residual functional capacity. (Pl.'s Opening Brief 3:11-4:28.) Plaintiff

argues that res judicata could not apply because Plaintiff had advanced from the "younger individual" category (under 50) to the "closely approaching advanced age" category (50 and over) between the time her first application was denied and she filed her second application. (Pl.'s Opening Brief 3:15-26.)

"The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988). "The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." Id.

In Chavez, the Court held that "the attainment of 'advanced age' constitutes a changed circumstances precluding the application of res judicata to the first administrative law judge's ultimate finding against disability." Id. Nonetheless, the Ninth Circuit went on to state that "[t]he first administrative law judge's findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent proceedings." Id. at 694. In Chavez, "[p]rinciples of res judicata made binding the first judge's determinations that the claimant had a residual functional capacity of light work, was of limited education, and was skilled or semi-skilled." Id.

Accordingly, Chavez plainly acknowledges that res judicata principles may preclude the ALJ from revisiting certain prior determinations even in light of a subsequent change in age categories. In Chavez, the Ninth Circuit held that principles of res judicata required the ALJ to give preclusive effect to the first ALJ's determination that the claimant could not perform his past work. Id. at 694-95. Accordingly, Chavez holds that the ALJ may not, under res judicata principles, decide that the claimant is less impaired than he/she was determined to be in the previous proceeding even if the claimant changed age categories.

Here, the ALJ applied res judicata in a manner similar to Chavez. In this case, the ALJ applied res judicata in Plaintiff's favor. The uncontroverted medical opinion evidence stated that Plaintiff had the residual functional capacity to perform medium work. (AR 22, 227, 230, 236, 244.) The ALJ stated that "absent changed circumstances, I am compelled to apply Chavez, and

7

my residual functional capacity findings is the same as the Administrative Law Judge's, i.e., a finding consistent with the ability to perform the full range of light and sedentary work." (AR 22.) Given the context of the ALJ's statement, it is clear that, but for the application of res judicata, the ALJ would have adopted the opinions of the physicians on record and concluded that Plaintiff could perform medium work, which for purposes of qualifying for Social Security benefits would have been a less favorable determination for Plaintiff.

Plaintiff cites Oberg v. Astrue, 472 Fed. Appx. 488, 490-91 (9th Cir. 2012) for the proposition that a change in age categories prohibits the application of res judicata by the ALJ.[2] In Oberg, the Ninth Circuit found that the ALJ erred by failing to note that the claimant changed age categories and noted, in dicta, that such a change "might affect [the claimant's] residual functional capacity ... or other aspects of the Commissioner's decision." Id. at 490-91. However, this case is distinguishable from Oberg because here, the ALJ did investigate whether Plaintiff's change in age categories affected other aspects of the prior decision of the Commissioner. Instead of relying upon res judicata and finding Plaintiff to be presumptively not disabled without further investigation, the ALJ in this case referred Plaintiff to consultative examiners to reassess Plaintiff's residual functional capacity. When the examiners opined that Plaintiff's physical limitations had somehow improved and that Plaintiff could perform medium work when she previously could only perform light work, the ALJ applied res judicata in Plaintiff's favor to reject the physicians' opinions.

Finally, even assuming for the sake of argument that the ALJ's erred in applying res judicata principles in determining Plaintiff's residual functional capacity, Plaintiff has suffered no prejudice from this error. See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (ALJ's error harmless where mistake is non-prejudicial to the claimant). As discussed below, the ALJ properly discredited Plaintiff's allegations pertaining to the severity of her symptoms. Given that all the physicians on record opined that Plaintiff could perform medium work, Plaintiff would have been worse off if the ALJ did not apply res judicata. Any

---

[2] Notably, Oberg is an unpublished opinion and therefore is not precedent pursuant Ninth Circuit Rule 36-3.

error by the ALJ in relying upon res judicata principles to support his finding that Plaintiff was more limited and could only perform light work was non-prejudicial to Plaintiff and therefore would constitute harmless error.

### C. The ALJ Did Not Err in His Analysis of Plaintiff's Credibility

Plaintiff contends that the ALJ did not provide sufficient reasons to discredit Plaintiff. (Pl.'s Opening Brief 5:1-6:17.)  Plaintiff contends that the reasons given by the ALJ were overbroad and insufficient to support an adverse credibility determination.  (Pl.'s Opening Brief 5:7-6:17.)

The ALJ is required to make a credibility determination that includes findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).  "The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996)).  If the claimant meets this threshold and there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his or] her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. (quoting Smolen, 80 F.3d at 1283-84.)  Factors in weighing a claimant's credibility include (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities.  Id. (quoting Smolen, 80 F.3d at 1284.)

Here, the ALJ properly cited specific, clear and convincing reasons for discrediting Plaintiff.  The ALJ cited Plaintiff's activities of daily living and the evidence of Plaintiff's "prescription drug seeking" in determining that Plaintiff was not fully credible.  (AR 21-22.) Plaintiff performed chores such as sweeping, mopping and doing dishes.  (AR 21, 51-52.) These activities are somewhat inconsistent with the limitations alleged by Plaintiff.  Plaintiff contended

that she could only walk for a total of one hour during an eight hour day or stand for thirty minutes. (AR 47.) Plaintiff's reported activities are also inconsistent with Plaintiff's alleged difficulties using her hands. (AR 48-49.) Notably, when asked, Plaintiff stated that she did not have any physical problems doing those chores. (AR 55-56.)

The most persuasive support for the ALJ's credibility determination is the evidence of Plaintiff's prescription drug seeking behavior. The record shows that on August 14, 2010, Dr. Flores signed a "Letter of Withdrawal of Care" and noted that Plaintiff failed to comply with his order to "keep <u>one</u> pain management doctor" and receive prescriptions from only one doctor. (AR 258.) Records from Dr. Singh's office indicate that Plaintiff, on several occasions, signed several prescription medication forms under the statement "I am not getting any pain medication from any other Dr./Clinic." (AR 249-252.) The evidence of Plaintiff's drug-seeking behavior is a clear and convincing reason to discount Plaintiff's credibility regarding the severity of her symptoms. See <u>Gray v. Commissioner of Social Sec. Admin.</u>, 365 Fed. Appx. 60, 63 (9th Cir. 2010).

Based upon the foregoing, the Court finds that the ALJ did not err in his assessment of Plaintiff's credibility.

## IV.

## CONCLUSIONS AND RECOMMENDATION

Based upon the foregoing, the Court finds that the ALJ's analysis was proper and the ALJ's conclusions were supported by substantial evidence. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner be DENIED and that JUDGMENT be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Angela Williams.

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate

Judge's Findings and Recommendation." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 11, 2013**

UNITED STATES MAGISTRATE JUDGE